# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| BROADCAST MUSIC, INC.; et al. | ) | CIVIL ACTION NO.: 3:16-cv-49 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JT SPORTS, INC. a/k/a JT SPORTS BAR, | ) | |
| INC. d/b/a DA STADIUM SPORTS BAR; | ) | |
| and JIMMY SUMMERLIN, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

I.      STATEMENT OF ISSUE AND SUMMARY ..................................................1

II.     STATEMENT OF UNDISPUTED FACTS ......................................................2

        A.      BMI...................................................................................................2

        B.      BMI's Pre-suit Contacts with Defendants .............................................3

        C.      BMI Commences Litigation and Defendants Fail to Respond to Discovery .........4

III.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ..........................7

        A.      There Are no Genuine Issues of Material Fact .............................................. 8

        B.      The Defendants Are Vicariously Liable for Acts of
                Infringement Committed at Da Stadium Sports Bar .................................. 10

IV.     PLAINTIFFS ARE ENTITLED TO THE RELIEF
        THEY REQUEST ................................................................................... 12

        A.      Injunctive Relief ..................................................................................... 12

        B.      Statutory Damages ................................................................................. 14

        C.      Attorney's Fees and Costs ...................................................................... 17

V.      CONCLUSION ....................................................................................... 18

## TABLE OF AUTHORITIES

<u>CASES:</u>                                                              <u>PAGE</u>

<u>Anderson v. Liberty Lobby, Inc.</u>,
  477 U.S. 242, 247-248 (1986) .................................................................. 7

<u>Boz Scaggs Music v. KND Corp.</u>,
  491 F. Supp 908 (D.Conn. 1980) .................................................. 1, 8, 12

<u>Bridgeport Music, Inc. v. Justin Combs Publ'g</u>,
  507 F.3d 470, 492 (6th Cir. 2007) ...................................................... 13

<u>Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.</u>,
  441 U.S. 1 (1979) ..................................................................................... 2

<u>Broadcast Music, Inc. v. Fox Amusement Co.</u>,
  551 F. Supp. 104 (N.D. Ill. 1982) ........................................................ 18

<u>Broadcast Music, Inc. v. Moor-Law, Inc.</u>,
  484 F. Supp. 357 (D. Del. 1980) ............................................................ 2

<u>Broadcast Music, Inc. v. Niro's Palace, Inc.</u>,
  619 F. Supp.  958 (N.D. Ill. 1985) .......................................... 10, 11, 13

<u>Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc.</u>,
  657 F. Supp. 1016 (S.D. Miss. 1987) ................................................ 1, 8, 9

<u>Broadcast Music, Inc. v. Question Mark</u>,
  1983 U.S. Dist. LEXIS 19544 (N.D. Tex. Feb. 3, 1983)........................ 17

<u>Broadcast Music, Inc. v. The Peppermint Club, Inc.</u>,
  229 USPQ 534 (N.D. Ohio 1986) ................................................... 11, 12

<u>Broadcast Music, Inc. v. Triple L Vending, Inc.</u>,
  5 USPQ2d 1346 (W.D. Tex. 1987) ................................................ 15, 16, 18

<u>Chi-Boy Music v. Charlie Club, Inc.</u>,
  930 F.2d 1224, 1229-30 (7th Cir. 1991)............................................. 16

Controversy Music v. Down Under Pub Tyler, Inc.,
  488 F. Supp. 2d 572, 579 (E.D. Tex. 2007) ........................................................17

Dream Dealers Music v. Parker,
  924 F. Supp. 1146, 1153 (S.D. Ala. 1996) ..........................................................16

EMI Mills Music, Inc. v. Empress Hotel, Inc.,
  470 F.Supp.2d 67 (D. Puerto Rico 2006) ............................................................ 14

F.W. Woolworth Co. v. Contemporary Arts, Inc.,
  344 U.S. 228 (1952) ............................................................................................ 14

Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,
  443 F.2d 1159 (2d Cir. 1971) .............................................................................. 11

Halnat Pub. Co. v. L.A.P.A., Inc.,
669 F. Supp. 933 (D. Minn. 1987) ....................................................................... 15

Herbert v. The Shanley Co.,
242 U.S. 591 (1917) .............................................................................................. 12

International Korwin Corp. v. Kowalczyk,
  855 F. 2d 375 (7th Cir. 1988) .............................................................................. 15

M. Witmark & Sons v. Calloway,
  22 F.2d 412 (D.Tenn. 1927) ................................................................................ 11

Milene Music v. Gotauco,
  551 F. Supp. 1288 (D. R.I. 1982) ............................................................. 1, 8, 9, 12, 18

Music City Music v. Alfa Foods Ltd.,
  616 F. Supp. 1001 (E.D. Va. 1985) ..................................................................... 14

Nick-O-Val Music Co. v. P.O.S. Radio, Inc.,
  656 F. Supp. 826 (M.D. Fla. 1987) ................................................................. 12, 15

Prater Music v. Williams,
 5 USPQ2d 1813 (W.D. Mo. 1987) ................................................................... 14, 15

Red Giant, Inc. v. Molzan, Inc.,
2009 U.S. Dist. LEXIS 63990 (S.D. Tex. July 24, 2009) ........................................................17

Rodgers v. Eighty Four Lumber Co.,
  623 F. Supp. 889 (W.D. Pa. 1985) ................................................................. 14, 15

Sailor Music v. IML Corp.,
  867 F. Supp. 565 (E.D. Mich. 1994) ............................................................... 16

Sailor Music v. Mai Kai of Concord, Inc.,
  640 F. Supp. 629 (D. N.H. 1986) ........................................................ 1, 8, 9, 10, 13

Shapiro, Bernstein & Co., Inc. v. H.L. Green Co., Inc.,
  316 F. 2d 304 (2d Cir. 1963) .......................................................................... 11

Stygian Songs v. Johnson,
776 F. Supp. 2d 233, 239 (N.D. Tex. 2011) ..............................................................17

Twentieth Century Music Corp. v. Aiken
  422 U.S. 151, 157 (1975) ......................................................................... 10, 11

Warner Bros., Inc. v. Lobster Pot, Inc.,
  582 F. Supp. 478 (N.D. Ohio 1984) ............................................................... 12

Wihtol v. Crow,
309 F.2d 777 (8th Cir. 1962) ................................................................... 11

Wow & Flutter Music v. Len's Tom Jones Tavern, Inc.,
  606 F. Supp. 554 (W.D. N.Y 1985) ............................................................... 15

STATUTES:                                                                    PAGE

17 U.S.C. Section 101 et seq ...................................................................... 2

17 U.S.C. Section 106(4)......................................................................... 2, 7

17 U.S.C. Section 501(a)......................................................................... 8, 10

17 U.S.C. Section 502 ............................................................................................ 8

17 U.S.C. Section 502(a) ...................................................................................... 13

17 U.S.C. Section 504 (c) ................................................................................ 8, 16

17 U.S.C. Section 504(c)(1) ................................................................................. 14

17 U.S.C. Section 504(c)(2) ................................................................................. 14

17 U.S.C. Section 505 .................................................................................. 8, 17, 18

28 U.S.C. Section 1338(a) ...................................................................................... 1

28 U.S.C. Section 1400(a) ...................................................................................... 1

28 U.S.C. Section 1746 ...................................................................................... 8, 9

Fed. R. Civ. P. 36 .................................................................................................. 5

Fed. R. Civ. P. 56(c) .............................................................................................. 7

Fed. R. Civ. P. 56(e) .............................................................................................. 7

## PUBLICATIONS:

F. Harper, F. James & O. Gray, The Law of Torts, § 26.3
  (2d ed.1986).................................................................................................. 11

Nimmer on Copyright, § 12.04[A] ..................................................................... 11

## I.   PRELIMINARY STATEMENT

This is an action for copyright infringement brought pursuant to 17 U.S.C. Section 101 et. seq. (the "Copyright Act"). Jurisdiction is vested in this Court under 28 U.S.C. Section 1338(a) and venue is proper under 28 U.S.C. Section 1400(a). Plaintiffs served written discovery on Defendants in December 2016; Defendants failed to answer and have not answered the discovery to date.  Plaintiffs move for summary judgment based on Defendants' deemed admissions, as well as, the evidence set forth in the appendices.

## II.  STATEMENT OF ISSUE AND SUMMARY

The issue before the Court is whether Plaintiffs' are entitled to summary judgment pursuant to Rule 56 when there are no general disputes as to any material facts and Plaintiffs are entitled to judgment as a matter of law.   To prevail in an action for copyright infringement, the Plaintiffs must establish the following five elements: (1) Originality and authorship of the copyrighted works involved; (2) Compliance with the formalities of the Copyright Act; (3) Proprietary rights in the copyrighted works involved; (4) Public performance of the compositions involved; and (5) Lack of authorization for public performance.  *Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc.*, 657 F. Supp. 1016 (S.D. Miss. 1987); *Sailor Music v. Mai Kai of Concord, Inc.,* 640 F. Supp. 629 (D.N.H. 1986); *Milene Music v. Gotauco*, 551 F. Supp. 1288 (D.R.I. 1982); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 90 (D. Conn. 1980).   There are no genuine factual disputes as to any of the requisite elements.   All elements are established by Defendants' deemed admissions, as well as, the evidence contained in the appendices.

Accordingly, summary judgment is appropriate at this time.

### III.  STATEMENT OF UNDISPUTED FACTS

A.      **BMI**

Plaintiff Broadcast Music, Inc. ("BMI") is a "performing rights society" which licenses the right to publicly perform copyrighted musical compositions works on behalf of the copyright owners of these works.  17 U.S.C. § 101.  The other Plaintiffs are the copyright owners of various compositions which are the subject of this lawsuit.  Ex. 1, Declaration of John Ellwood ("Ellwood Declaration"), at  ¶ 3, 4.  Under the Copyright Act, the owners of copyrights in musical compositions possess the exclusive right to authorize public performances of their works.  Copyright Act at § 106(4).

Through agreements with copyright owners such as music publishing companies and independent composers, BMI acquires non-exclusive public performance rights.  Ellwood Declaration at ¶ 2.  BMI has acquired such rights from each of the other Plaintiffs in this action.  Ellwood Declaration at ¶ 5.

BMI, in turn, grants to music users such as broadcasters and the owners and operators of concert halls, restaurants, nightclubs and hotels, the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements". Ellwood Declaration at ¶ 2.   These agreements have been recognized as the most practical means to exploit copyright owners' public performance rights.  See Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1 (1979); Broadcast Music, Inc. v. Moor-Law, Inc., 484

F. Supp. 357 (D. Del. 1980), 527 F. Supp. 758 (D. Del. 1981), aff'd without published opinion, 691 F. 2d 491 (3d Cir. 1982).

BMI operates as a non profit-making performing rights organization.  It distributes all of the money it collects in license fees from music users - - licensees such as the restaurants, hotels and nightclubs referenced above - - as royalties to its affiliated publishers and composers, after the deduction of operating expenses and reasonable reserves.  Ellwood Declaration at ¶ 3.

B.    **BMI's Pre-Suit Contacts with Defendants**

The Defendants, JT Sports, Inc. a/k/a JT Sports Bar, Inc. ("JT Sports") and Jimmy Summerlin, each individually (collectively "Defendants") own and operate Da Stadium Sports Bar located at 5231 Burke Rd., Suite 100, Pasadena, Texas 77504 (the "Establishment" or "Da Stadium Sports Bar"), which regularly features performances of live and recorded music. See Ex. 3A, Plaintiffs' First Request for Admissions (the deemed "Admissions"), attached to the Declaration of Scott Andrews ("Andrews Declaration").

As more fully set forth in the Declaration of Brian Mullaney, Vice President, Sales, Licensing (the "Mullaney Declaration"), between September 2012 and April 2015, BMI repeatedly informed the Defendants of the need to obtain permission for public performances of copyrighted music. Ex. 2, Mullaney Declaration at ¶¶ 3-5, 7.  BMI offered to enter into a license agreement with the Defendants, but the Defendants did not enter into a license agreement.  Mullaney Declaration at ¶ 8.

On May 20, 2014, BMI instructed the Defendants to cease public performances of music licensed by BMI.  Id.  at ¶ 5.  Nevertheless, public performances of BMI-licensed music continued at Da Stadium Sports Bar after that date and performances of songs owned by the Plaintiffs were chronicled by a BMI investigator on the evening of April 1, 2015 and the early morning of April 2, 2015.  Id at ¶ 9. Specifically, BMI's investigator generated a written report of the songs played at Da Stadium Sports Bar on those nights, which includes nine of the ten songs that are the subject of this infringement action.  Id.  BMI's investigator also made a recording of the songs performed during his visit.  Id.  The audio recording of the evening of April 1, 2015 and the early morning of April 2, 2015 visit was submitted to BMI and in turn was submitted to a BMI Performance Identification employee, Rebecca Delius, to review the recording and identify or verify the performed musical works.  Ms. Delius' review of the audio recording confirmed the performance of the nine songs identified by the investigator - Don't Worry, Be Happy, Edge of Seventeen, Me and Bobby McGee, She Talks to Angels, Tainted Love, Get Rhythm, Rehab, You Know I'm No Good and Lonely Eyes - as well as the additional composition which is alleged in Plaintiff's Complaint to have been performed (Round Here).

All of the songs identified in the Complaint were performed by a woman referred to as "DJ Laura," from GTO Karaoke, using a laptop computer to generate karaoke tunes. Id. at 9 and Exhibit 2A.

C.      **BMI Commences Litigation and Defendants Fail to Respond to Discovery.**

The Plaintiffs commenced this action for copyright infringement on February 22, 2016.  The Defendants' handwritten Answer was filed on or about April 26, 2016.  The Answer states in whole:

> I wasn't aware I needed BMI license.  I was under the impression that it was [paid] through the internet jukebox as we pay a fee through AMI but now that I'm aware of the licensing procedure I'm willing to take what steps I need to obtain a BMI license.

Defendants' Answer, Dkt. No. 12.  Defendants produced no other information in this matter, failed to respond to discovery and do not currently have a license agreement with BMI. See Mullaney Declaration at ¶15.  As noted above, all songs alleged to have been performed in this case were performed by a karaoke/DJ; no songs alleged to have been performed in this case were performed by means of a jukebox.

Plaintiffs served Interrogatories, Requests for Production, and First Request for Admissions on Defendants on December 15, 2016 via email and Certified Mail Return Receipt Requested ("CMRR").  A copy of the discovery is attached to the Andrews Declaration as Exhibit 3A.  A copy of the service email and delivery receipt is attached as Exhibit 3B and a copy of the CMRRR receipt is attached as Exhibit 3C.  Defendants did not respond to Plaintiffs' written discovery, including Request for Admissions, within the time provided by Fed. R. Civ. P. 36.    To date, Defendants have not responded to Plaintiff's written discovery.  Andrews Declaration at ¶ 9.

By not responding to Plaintiffs' First Request for Admissions, Defendants admit to all

of the pertinent facts of the case. They admit that on the evening of April 1, 2015 and the early morning of April 2, 2015 Defendants JT Sports, and Jimmy Summerlin operated and maintained the Da Stadium Sports Bar, had right and ability to direct and control the activities of the Establishment and had a direct financial interest in the Establishment. See Ex. 3A, Admissions, at 1-5 and 7. In addition, Defendants admit that Defendant Jimmy Summerlin had the right and ability to supervise the persons employed by Da Stadium Sports Bar on the evening of April 1, 2015 and the early morning of April 2, 2015. See id. at Admission 6.

Defendants admit that on the evening of April 1, 2015 and the early morning of April 2, 2015 Defendant Jimmy Summerlin was the President of Defendant JT Sports. See id. at Admission 8. Defendants admit that on the evening of April 1, 2015 and the early morning of April 2, 2015 Da Stadium Sports Bar was open to the public and musical compositions were publicly performed there. See id. at Admissions 9-10. Defendants admit that between September 2012 and April 2015, BMI offered to grant them a license for the public performance of musical compositions at Da Stadium Sports Bar and none of the Defendants was licensed by any of the Plaintiffs to publicly perform any of their musical compositions on the evening of April 1, 2015 and the early morning of April 2, 2015. See id at Admissions 39-40.

Notably, Defendants' Answer also appears to admit the pertinent facts. See Defendants' Answer, Dkt. No. 12. It was filed by Mr. Summerlin on behalf of himself and

JT Sports, which supports that Mr. Summerlin is the owner of Da Sports Bar with direct financial interest and the responsibility for the Establishment. It likewise does not deny the works were performed.

Importantly,  BMI's 80+ attempts to contact Mr. Summerlin by phone and mail and to educate and advise Mr. Summerlin that a BMI license was required to perform works in BMI's repertoire, belie Mr. Summerlin's assertion that he thought he could perform BMI music in any way that he wanted by means of a jukebox license.

As there are no issues of fact remaining in this action Plaintiffs are entitled to Judgment as a matter of law.

### IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT

Plaintiffs are entitled to summary judgment against Defendants as a matter of law. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  Moreover, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials ... but

the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Copyright Act provides the owner of a copyright with the exclusive right to perform, or to authorize others to perform, the copyrighted work.  17 U.S.C. Section 106(4). Any person who violates this exclusive right is an infringer.  Id. at Section 501(a).  It is undisputed that the Defendants publicly performed the Plaintiffs' copyrighted musical compositions without authorization in violation of the Copyright Act.  Accordingly, Plaintiffs seek judgment as a matter of law, statutory damages, injunctive relief and attorney's fees and costs.  See 17 U.S.C. § 504 (c), 502 and 505.

### A.    There Are no Genuine Issues of Material Fact

There are no genuine issues of material facts and summary judgment should be granted to Plaintiffs against Defendants.

In order to prevail in an action for copyright infringement, the Plaintiffs must establish the following five elements:

1.    Originality and authorship of the copyrighted works involved;

2.    Compliance with the formalities of the Copyright Act;

3.    Proprietary rights in the copyrighted works involved;

4.    Public performance of the compositions involved; and

5.    Lack of authorization for public performance.

Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc., 657 F. Supp. 1016 (S.D.

Miss. 1987); <u>Sailor Music v. Mai Kai of Concord, Inc.</u>, 640 F. Supp. 629 (D.N.H. 1986);

<u>Milene Music v. Gotauco</u>, 551 F. Supp. 1288 (D.R.I. 1982); <u>Boz Scaggs Music v. KND</u>

<u>Corp.</u>, 491 F. Supp. 90 (D. Conn. 1980).

The <u>first</u> <u>three</u> elements are established in the Ellwood Declaration which constitutes sufficient evidence of the facts sworn to therein.    28 U.S.C. § 1746.   The Ellwood Declaration, referring to the Schedule of the Complaint, sets forth the names of the authors and publishers of each composition, the date of copyright registration and the registration number. Ellwood Declaration at   ¶ 4.  The Declaration is supplemented with copies of each registration certificate and subsequent documentation relating to the chain of ownership of the songs.   There is no dispute of these facts.   By not responding to the Plaintiffs' First Request for Admissions, numbers 31, 33, 35, the Defendants do not dispute the elements of originality, proper registration and proprietary interest. <u>See</u>   <u>Broadcast Music, Inc. v. Pine</u> <u>Belt Investment Developers, Inc.</u>, 657 F. Supp. at 1020; <u>Milene Music, Inc. v. Gotauco</u>, 551 F. Supp. 1288.   Defendants also do not dispute that they have no evidence to rebut the Plaintiffs' proof on these three points by not responding to the Plaintiffs' First Request for Admissions, numbers 32, 34, 36.  <u>Id.</u>

The <u>fourth</u> element, public performance, is established by the Certified Infringement Report of Robert Allman who was hired by BMI for the purpose of visiting the Establishment and making written reports of musical compositions which were performed as well as the Music Researcher review of the audio recording of Mr. Allman's visit. Mullaney Declaration

at ¶¶ 9-10.  Mr. Allman's Certified Report and the Review Certification are attached to the Mullaney Declaration at Exhibit 2A and, as discussed in more detail below, it is clear that performance of the music may also be established by Certification.  28 U.S.C. § 1746; Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc., 667 F. Supp. at 1020; Sailor Music v. Mai Kai of Concord, Inc., 640 F. Supp. 629.  The <u>fifth</u> element, lack of authorization, is similarly established in the Mullaney Declaration and likewise undisputed by the Defendants.  The Mullaney Declaration verifies that the Defendants did not enter into a BMI license agreement, nor were the performances otherwise authorized. Moreover, Defendants continued to publicly perform copyrighted music without permission after being instructed to cease, as indicated by the Certified Infringement Report. Mullaney Declaration at ¶ 5 and Exhibit 2A.

### B. The Defendants Are Vicariously Liable for Acts of Infringement Committed at Da Stadium Sports Bar

JT Sports is itself liable for infringing acts committed at the Da Stadium Sports Bar establishment. See Broadcast Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 961 (N.D. Ill. 1985)([n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance) (citing Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975)).  Similarly, as President of JT Sports, Defendant Jimmy Summerlin is the corporate officer directly controlling Da Stadium Sports Bar and is liable for the infringing acts committed at Da Stadium Sports Bar.  See Sailor Music, 640 F. Supp. at 633 (a corporate officer is liable as a joint tortfeasor in a copyright infringement action where the officer was

the dominant force in the corporation and determined the policies which resulted in the infringement).

The Copyright Act, at 17 U.S.C. Section 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by Sections 106 through 121 . . . is an infringer of the copyright . . ." Interpreting the equivalent section under the Copyright Act of 1909, the Second Circuit Court of Appeals stated: "Although the Act does not specifically delineate what kind or degree of participation in an infringement is actionable, it has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition." Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F. 2d 1159, 1161-62 (2d Cir. 1971).

In an earlier Second Circuit case, the Court stated:

> [T]he cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income.  He is liable whether the band leader is considered, as a technical matter, an employee, or an independent contractor and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.

Shapiro, Bernstein & Co., Inc. v. H.L. Green Co., Inc., 316 F. 2d 304, 307 (2d Cir. 1963); Broadcast Music, Inc. v. The Peppermint Club, Inc., 229 U.S.P.Q. 534, 537-38 (N.D. Ohio 1986).

As the sponsor of the public performances, the corporate Defendant JT Sports is liable for infringement at Da Stadium Sports Bar. See Broadcast Music, Inc. v. Niro's Palace, Inc.,

619 F. Supp. 958, 961 (N.D. Ill. 1985)([n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance)(citing Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975)).  The corporate Defendant, JT Sports is likewise responsible for the tortious actions of their employees under the doctrine of respondeat superior.  Wihtol v. Crow, 309 F.2d 777, 782-783 (8th Cir. 1962); M. Witmark & Sons v. Calloway, 22 F.2d 412, 414 (D.Tenn. 1927).  See generally F. Harper, F. James & O. Gray, The Law of Torts, §26.3 (2d ed. 1986).  See also Nimmer on Copyright, §12.04[A].

Not only are JT Sports and Jimmy Summerlin liable for infringements occurring at Da Stadium Sports Bar, but Jimmy Summerlin is individually liable.  "A corporate officer is jointly and severally liable, with his corporation for copyright infringement if he (1) 'had the right and ability to supervise the infringing activity', and (2) 'has a direct financial interest in such activities'."  The Peppermint Club, Inc., 229 USPQ at 538, (quoting Warner Bros., Inc. v. Lobster Pot, Inc., 582 F. Supp. 478, 483 (N.D. Ohio 1984)). See also Nick-O-Val Music Co. v. P.O.S. Radio, Inc., 656 F. Supp. 826, 828 (M.D. Fla. 1987); Milene Music, Inc. 551 F. Supp. at 1295; Boz Scaggs Music 491 F. Supp. at 913-14.   Defendant Jimmy Summerlin, as President of JT Sports, had responsibility for the day to day activities there.

## V.      PLAINTIFFS ARE ENTITLED TO THE RELIEF THEY REQUEST

Plaintiffs request permanent injunctive relief, statutory damages for each of the claims of infringement, costs and reasonable attorney's fees.  Each aspect of the requested relief is briefly discussed below.

A.   **Injunctive Relief**

Musical performances are obviously important to the operation of Da Stadium Sports Bar.  "If music did not pay, it would be given up."  Herbert v. The Shanley Co., 242 U.S. 591, 595, 37 S.Ct. 232, 233 (1917).  It is clear from the fact that a BMI investigator logged unauthorized performance of music in the BMI repertory - - long after Defendants' receipt of numerous calls and letters from BMI - - that Defendants did not give it up. Plaintiffs therefore seek injunctive relief to prevent further copyright violations.  See Bridgeport Music, Inc. v. Justin Combs Publ'g, 507 F.3d 470, 492 (6th Cir. 2007).

17 U.S.C. Section 502(a) provides that the Court may grant final injunctions "to prevent or restrain infringement of a copyright." As one court has stated in a case similar to this:

> A permanent injunction is especially appropriate where a threat of continuing infringement exists. . . The threat of continuing infringement is substantial in the present case.  Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI.  This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

Broadcast Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 963 (N.D. Ill. 1985).  Here, as in Niro's, the Defendants willfully disregarded the copyrights held by the Plaintiffs, as well as oral and written notice and continued to perform copyrighted musical compositions for years with no license to do so.

Even where Defendants have secured licenses after the time of the infringements,

injunctive relief is warranted.  In <u>Milene Music</u>, the defendants were licensed by the time the court considered the plaintiffs' Motion for Summary Judgment.  The Court granted injunctive relief stating that "[t]he history of defendants' actions...exhibits an unfortunate tendency conveniently to ignore, from time to time . . . the plaintiffs' proprietary rights."  551 F. Supp. at 1295-1296.  <u>See also</u> <u>Sailor Music</u>, 640 F. Supp. at 634-35.

In this instance where the Defendants are as yet unlicensed and continue to offer unauthorized performances of the Plaintiffs' music, broad injunctive relief is appropriate and necessary.

**B.**     <u>**Statutory Damages**</u>

The Copyright Act empowers a Plaintiff to elect to receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement in lieu of an award representing the Plaintiffs' actual damages and the Defendant(s)' profits.  17 U.S.C. Section 504(c)(1).  Furthermore, "[i]n a case where the copyright owner sustains the burden of proving...that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. Section 504(c)(2).  Within these statutory limits, the assessment of damages is at the discretion of the court.  <u>See</u> <u>F.W. Woolworth Co. v. Contemporary Arts, Inc.</u>, 344 U.S. 228, 231-32 (1952).

Statutory damages are "designed to discourage wrongful conduct...and vindicate the

statutory policy." Id. at 233.  "The court's award should be designed to compensate plaintiffs as well as to punish defendant[s]."  Prater Music v. Williams, 5 USPQ2d 1813, 1816 (W.D. Mo. 1987).  To further discourage continued abuse and give effect to the Copyright Act, the amount awarded in statutory damages should significantly exceed the amount of unpaid license fees. See EMI Mills Music, Inc. v. Empress Hotel, Inc., 470 F. Supp.2d 67, 75-76 (D. Puerto Rico 2006).  As the court in Prater Music held:  "If the copyright laws are to have any effect, a judgment against [a] defendant must be appreciably more than the amount he would have had to expend to obtain permission."  5 USPQ at 1816.  Music users such as the Defendants should be "put on notice that it costs less to obey the copyright laws than to violate them."  Rodgers v. Eighty Four Lumber Co., 623 F. Supp. 889, 892 (W.D. Pa. 1985), quoting Music City Music v. Alfa Foods Ltd., 616 F. Supp. 1001, 1003 (E.D. Va. 1985).  See also Broadcast Music, Inc. v. Triple L Vending, Inc., 5 USPQ2d 1346, 1349 (W.D. Tex. 1987); Halnat Pub. Co. v. L.A.P.A., Inc., 669 F. Supp. 933 (D. Minn. 1987).

    As set forth in the Mullaney Declaration, when BMI first contacted the Defendants on September 28, 2012, Da Stadium Sports Bar was asked to execute a license agreement. Despite the numerous calls and letters, to date, BMI has not received a license agreement or any license fees from the Defendants.

    The court, in its discretion, may also augment the amount of statutory damages awarded to reflect the degree of culpability exhibited by the Defendants.  See Wow & Flutter Music v. Len's Tom Jones Tavern, Inc., 606 F. Supp. at 555-57.  "Where a defendant

continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful."  Prater Music v. Williams, 5 USPQ2d at 1815; accord International Korwin Corp. v. Kowalczyk, 855 F. 2d. 375 (7th Cir. 1988); Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc., 656 F. Supp. at 829; Rodgers, 623 F. Supp. at 892.

The record supports a finding that the Defendants deliberately violated the Plaintiffs' rights.  As set forth in the Mullaney Declaration, between September 2012 and April 2015, BMI sent letters to the Defendants and repeatedly advised them of the need to enter into a license agreement.  Mullaney Declaration at ¶¶ 3-5, 7, 12-13.  A BMI representative telephoned Defendants on sixty-four (64) occasions.  Mullaney Declaration at ¶ 7.  On May 20, 2014, BMI sent Defendants an overnight letter informing them that they must immediately cease unauthorized performances of BMI-licensed music, with several follow up letters.  Mullaney Declaration at ¶ 5. Despite all of this, a BMI investigator made a written record of the performance of ten (10) BMI-licensed compositions after that date. Mullaney Declaration at, ¶ 9, Exhibit 2A.

This is clearly a situation where the Plaintiffs should be awarded damages well in excess of the statutory minimum.  Within the limits of $750 and $30,000 per infringement, the amount of any statutory damages award is within the discretion of this Court.  17 U.S.C. §504(c) (1999).  For the ten (10) acts of infringement described in the Complaint, Plaintiffs request a total award of $40,000.00.  This figure is approximately three times the amount Plaintiffs would have received in licensing fees from Defendants had their establishment

properly been licensed for the past 5 years, id. ¶ 17, and constitutes an award of approximately $4,000.00 for each of the ten (10) infringements.

Courts consistently have held that a statutory damages award three times the amount that the plaintiff would have received in licensing fees is appropriate under Section 504(c). See Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1229-30 (7th Cir. 1991); Broadcast Music, Inc. v. Triple L Vending, Inc., 1987 U.S. Dist. LEXIS 13262 , 5 U.S.P.Q.2D 1346 (W.D. Tex. 1987)(awarding approximately three times the total cost of licensing fees, noting that "such an award would provide a more precise amount of statutory damages."); Dream Dealers Music v. Parker, 924 F. Supp. 1146, 1153 (S.D. Ga. 1994) (awarding three times what defendant would have paid ASCAP to be licensed). See also Sailor Music v. IML Corp., 867 F. Supp. 565, 570 (E.D. Mich. 1994) (reviewing "a survey of statutory awards throughout the country, all of which indicate that the courts typically award three times the amount of a properly purchased license for each infringement").

Further, Courts considering awards of statutory damages have recognized that awards in the range of $2,500 to $10,000.00 per infringement are appropriate in cases where the infringement resulted from deliberate indifference toward copyright laws. See Broad. Music, Inc. v. Bentley, 2017 U.S. Dist. LEXIS 27581, *12 (W.D. Tex. Feb. 28, 2017)(awarding $2,500 per count); Stygian Songs v. Johnson, 776 F. Supp. 2d 233, 239 (N.D. Tex. 2011)(awarding $10,000.00 for each of five works infringed, for a total statutory damage award of $50,000.00); Broadcast Music, Inc. v. Question Mark, 1983 U.S. Dist. LEXIS

19544 (N.D. Tex. Feb. 3, 1983) (finding that "an award of $10,000 for each of nine infringements is reasonable, particularly in light of Question Mark's refusal of BMI's offer to grant a license for the public performance of the compositions in issue."); Controversy Music v. Down Under Pub Tyler, Inc., 488 F. Supp. 2d 572, 579 (E.D. Tex. 2007) (awarding statutory damages in the amount of $25,000.00, finding "an award of $5,000 per infringement is just and sufficient to deter future copyright violations while promoting respect for the law."); Red Giant, Inc. v. Molzan, Inc., 2009 U.S. Dist. LEXIS 63990 (S.D. Tex. July 24, 2009) (finding "$7,500 for each of the four infringements, for a total of $30,000, to be an appropriate award."). For the foregoing reasons, Plaintiffs' request is a modest, just, and appropriate statutory damages award.

### C.    Attorney's Fees and Costs

The Copyright Act expressly provides that the "court may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. Section 505. Because it is consistent with the purpose of the Copyright Act, courts routinely award the reasonable fees incurred by a Plaintiff asserting its rights. See Triple L Vending, Inc., 5 USPQ2d at 1349-52; Broadcast Music, Inc. v. Fox Amusement Co., 551 F. Supp. 104 (N.D. Ill. 1982); Milene Music, Inc. v. Gotauco, 551 F. Supp. at 1297.

In the present case, the Defendants have intentionally ignored their obligation under the Copyright Act and have forced Plaintiffs to engage in litigation to enforce their rights. Accordingly, Plaintiffs should be awarded full attorney's fees.

The Copyright Act expressly provides that the court "in its discretion may allow the recovery of full costs by or against any party ..." 17 U.S.C. Section 505.  Under this provision, the courts have allowed full recovery by the prevailing party of its reasonable costs.  <u>See Milene Music, Inc. v. Gotauco</u>, 551 F. Supp. at 1297.  There are no factors which would militate against an award of the Plaintiffs' costs in the present case.  Such an award is particularly appropriate in light of the Defendants' deliberate misconduct and the statutory purpose of encouraging private enforcement of the Copyright Act.  As the date of the filing of this motion, Plaintiffs have incurred attorneys' fees in the amount of $10,100.00 and costs in the amount of $781.95.  Andrews Declaration at ¶¶ 3-5.

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs request that the Court:

    (1)    Enter a Summary Judgment in its favor against each Defendant, jointly and severally;

    (2)    Enter an order permanently enjoining Defendants from further acts of infringement;

    (3)    Award Plaintiffs statutory damages of Forty Thousand Dollars ($40,000) which is Four Thousand Dollars ($4,000) for each of the ten (10) acts of copyright infringement alleged in the Complaint;

    (4)    Award Plaintiffs their full costs in the amount of $781.95;

    (5)    Award Plaintiffs their reasonable attorney's fees in the amount of

$10,100.00; and

(6)     Grant such other and further relief as the Court deems appropriate.


Dated: March 20, 2017

Respectfully Submitted,

By: /s/ J. Scott Andrews
**David LeBlanc**
Attorney-In-Charge
Greer, Herz, & Adams, L.L.P.
State Bar No. 00791090
S.D. Tex. Bar. No. 20097
2525 South Shore Boulevard, Suite 203
League City, Texas  77573
(409)797-3200 (Telephone)
(409) 766-6424 (Telecopy)
dleblanc@greerherz.com

**J. Scott Andrews**
Greer, Herz, & Adams, L.L.P.
State Bar No. 24064823
S.D. Tex. Bar. No. 1589440
One Moody Plaza, 18th Fl.
Galveston, Texas 77550
(409)797-3200 (Telephone)
(409) 766-6424 (Telecopy)
jandrews@greerherz.com

**Meg Boulware**
Boulware & Valoir
State Bar No. 0611770
S.D. Tex. Bar No. 3411
Three Riverway, Suite 950
Houston, TX 77056
Tel:  (832) 369-7852
Fax:  (713) 650-6458
mboulware@boulwarevaloir.com

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that a true and correct copy of this document was served upon the following, as indicated below, on this the 20th day of March 2017.

*Via Email (<u>jsasummerlin@yahoo.com</u>) & CMRRR #7013 2250 0000 5664 4425*

**Jimmy T. Summerlin** (*pro se*)
Da Stadium Sports Bar
5231 Burke Rd.
Pasadena, TX 77504
713-398-9131
jsasummerlin@yahoo.com

By: <u>/s/ J. Scott Andrews</u>
J. Scott Andrews